Judge Underwood,
delivered the opinion of the court.
In 1790, the will of Charles Edwards was admitted to record in King and Queen county, Virginia, by the court thereof. By it, the testator devised to his son, William Edwards, for life, a slave named Stephen; remainder-to the children of said William, who, in 1797, removed to Mercer county, Kentucky, where he died in 1825, In 1798, William Edwards sold Stephen to Emery, The slave Stephen was repeatedly sold and transferred until he came to Sevier, the testator of the defendants in error, by purchase from the plaintiff in error, who executed a bill of sale, warranting the title in fee. Upon the death of William Edwards, his children claiming under the will of their grandfather, Charles, instituted an action of det-inue against Sevier’s executors, and recovered. Whereupon, said executors brought this action of covenant against Johnson upon the warranty of title contained in the bill of sale executed by him, and obtained judgment ; to reverse which, this writ of error is prosecuted. Those questions deemed worthy of notice, will only he mentioned.
After the evidence was closed, the defendant in the circuit court and plaintiff here moved the court to in *141 struct the jury, “that if they believed from the evidence, that William Edwards, and those claiming under him, from Emery down to Sevier, had, during the periods of their respective ownership, from the year 1797, held, possessed, and claimed the said slave Stephen, as their own property, without the existence of any writing of record in Kentucky, showing the right of the heirs (meaning children) of William Edwards to said slave, the law was for the defendant Johnson, and they should find accordingly.” This instruction the court refused to give. On the application of the executors, plaintiffs below, and defendants here, the court instructed the jury, “that the recovery in the case of the children of William Edwards against said executors in the action of detinue, furnished the criterion by which they ought to find a verdict in the present case.” To the giving of this instruction, the defendant in the circuit court objected. The propriety of these instructions, constitute the only important questions presented for consideration.
Failure to re-“hastate111 which was made and re-yh^fni^does notSprev’ent remanderman t^i^eter-mined, from recovery of' Revised by the will, thU rtate and sold by" the owner of *^t°aPfrtloular *
fraa an°[ perjuries doee not aPPJyto sucl1 case‘
In relation to the first, the case of Boone vs. Dyke’s legatees, III Monroe, 537, is conclusive. The question growing out of lapse of time, was there made and decided by the court, upon facts like those existing in the present case. If the court in that case, had been of opinion, that the statute to prevent frauds and perjuries had any application, a fit occasion presented itself to protect the defendants, by bringing them within the . operation of that statute. Not having done so, the con-elusion results, that the court thought the statute inapplicable, and such is our opinion. It follows, that the court did not err in withholding the instruction.
In regard to the instruction given on the motion of the defendants in error, we think thecircuit court erred, William Edwards could lawfully sell his life estate in Stephen. If he undertook to sell the absolute right in fee, his bill of sale was good to pass the life estate, but no more. When Johnson sold to Sevier, the life estate of William Edwards, passed, and no more, although Johnson warranted the title in fee. Now after the death of Edwards and the recovery of the slave by the remainder claimants, Johnson ought not to be responsible on his warranty for the value of Stephen at the time Sevier purchased, or for the amount of the pur *142 chase money; because at that time, Johnson had aright to sell an estate in,the slave, during the life of •py¡war^s. anq j£ Edwards survived the slave, Sevier could not be injured by the defect of title or breach of warranty, to the full value of the slave. During the life of. Edwards, the services of the slave belonged absolutely to Sevier,,. His value would diminish by age, and if he was recovered from Sevier, after he had en- ■ joyed the services of the slave during his prime, and when the slave had become less capable of service, in estimating the damages which Sevier sustains, the ser-. vices of the slaye,, during the time Sevier had an indisputable 'right to them, ought not to be-overlooked..
Amount of*' recovery by remanderman, against ven-dee of owner for life estate-in slave, is not the criterion of damages in suit by such vendee against bis vendoron covenant of warranty of title.
In such case, value of slave at time he is demanded by remainder claimants after termination of the life estate, with interest on that value, and costs of suit are proper measure of war-rantor’s responsibility.
When they are considered, it seems to us, that the value ,of the slave, atthe time he is demanded, by the remainder - claimants,, after the termination of the life estate with... interest on- that value, is the proper criterion by which to measure the warrantor’s responsibility. In addition to this,, the costs of the suit in which the slave was re-. covered from Sevier’s executors,, should be allowed; those costs have been incurred in defending the title in. good faith. The instruction of the court, presented a, different criterion. "By-theinstruction,the hire of the-slave, which the children of Edwards recovered from Sevier’s executors, was allowed to be recovered by the-latter, from Johnson. Now this hire might either exceed or fall short of the interest on the value of the-slave, which ought to be allowed in such cases. If the suit, Sevier’s executors vs. Johnson, had been procrastinated for a long time, the hire recovered as damages from the executors by Edward’s children, would-have fallen short of the interest on the value of the slave; and therefore, wouldnot have been an adequate remuneration for the loss. If the executors recovered when the hire exceeded the interest, and were permitted to recover the hire instead of the interest, they would get more than justice demands, according to» legal rules.
Again, the evidence uponthe trial between Sevier’s executors and Johnson, in relation to the value of the slave and his hire, may be very different from what it was on the trial of the suit between Edward’s children,, the remainder claimants and Sevier’s executors. As Johnson, was no party to this last suit, it was improper *143 to conclude him by the evidence given ón the trial of it, relative to the value of Stephen or his hire. This was done by the instruction of the court. We any thing in this opinion, to inculcate the idea, that if a sale of a slave is made, and a bill of sale warranting the absolute title, executed, and the purchaser should thereafter, ascertain, that the vendor only held a life estate, that the purchaser would be without remedy upon the warranty, until after the termination of the life estate. Nor need we indicate what remedy would be proper, during the continuance of the tenancy for life. The rule, in relation to damages, which we have prescribed, when the life estate has ended, appears to us correct; and as the instruction of the court pointed to a different criterion, the judgment for that cause must be reversed, and the cause remanded for a new trial.
Cunningham, for plaintiff; Green and Harlan, for defendants.
The plaintiff in error must recover his costs, de bonis testatoris.